IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL SILVA, *et al.*,

      Plaintiffs,

v.                                         Civ. No. 24-874 GBW/GJF

WEST TEXAS FRAC SAND
LOGISTICS LLC, *et al.*,

      Defendants.

## <u>ORDER GRANTING PLAINTIFFS' MOTION TO REMAND</u>

THIS MATTER comes before the Court on Plaintiffs' Motion to Remand. *Doc. 18*.

Having considered the Motion and the attendant briefing (*docs. 26, 33, 36*), and being

otherwise fully advised in the premises, the Court GRANTS the Motion.

## I.   BACKGROUND

The relevant facts of this case arise from a motor vehicle accident that occurred

on July 31, 2021, in Carlsbad, New Mexico, in which Plaintiff Michael Silva was injured.

*See generally doc. 1-1*. The accident involved a tractor-trailer operated by Defendant

Augustine Ugoagwu. *Id*. ¶ 42. At the time, the tractor was owned by Defendant Don-

Nedu Transnational LLC ("Don-Nedu") and leased to Defendant West Texas Frac Sand

Logistics LLC ("West Texas Frac") for the purpose of delivering frac sand to well sites.

*Id*. ¶ 22. The trailer attached to the tractor was allegedly owned by Defendant

Halliburton Energy Services, Inc. ("Halliburton"), acting in its capacity as a shipper. *Id*. ¶¶ 24-25.

Prior to the subject accident, Defendant Halliburton contracted with Defendant LoHi Logistics, LLC ("LoHi") to broker the transportation of frac sand to Halliburton's well sites using third-party motor carriers. *Id*. ¶ 25. As part of its brokerage services, Defendant LoHi arranged for the shipment by connecting Defendant Halliburton with a contracted carrier, Defendant West Texas Frac. *Id*. ¶¶ 29-30. Plaintiff alleges that Defendant LoHi maintained possession of the trailer and provided it to Defendant West Texas Frac for use in making the delivery it had arranged on behalf of Defendant Halliburton. *Id*. ¶¶ 34, 37-38. It was during the course of this delivery that the subject accident occurred, resulting in injuries to Plaintiff Silva. *Id*. ¶¶ 42-46.

Plaintiffs originally filed suit on September 2, 2021, in the First Judicial District Court, County of Santa Fe, New Mexico, asserting claims of negligence and negligence per se against Defendants West Texas Frac, Don-Nedu, and Ugoagwu. *Doc. 17-1* at 2-11. On July 26, 2022, Plaintiffs filed a First Amended Original Complaint to Recover Damages for Personal Injuries adding Halliburton as a Defendant. *Id*. at 98-106. On July 29, 2024, Plaintiffs filed a Second Amended Original Complaint to Recover Damages for Personal Injuries ("Second Amended Complaint"), adding Defendant

LoHi based on its alleged role as Defendant Halliburton's broker.[1]  *Id*. 764-781.  The

Second Amended Complaint remains the operative Complaint.  *See id.*; *see also doc. 1-1*.

The operative Complaint asserts two substantive causes of action—negligence and

negligence per se—and includes a separate count seeking punitive damages.  *Doc. 1-1*

¶¶ 47-78.  Plaintiffs generally allege that Defendant LoHi breached its duty of care by

failing to exercise reasonable diligence in, *inter alia*, selecting, hiring, and screening

Defendants West Texas Frac and Ugoagwu, and by failing to ensure that the subject

trailer was properly inspected and visible to other motorists at night.  *See generally id*.

Relevant here, Plaintiffs' negligence per se claim alleges that Defendant LoHi's "acts

and omissions as alleged in the other counts of this Complaint were negligent violations

of [49 C.F.R.] §§ 393.11(b) and 392.33(a), the Federal Motor Vehicle Safety Standard No.

108, and 49 [C.F.R. §] 571.108, among others."  *Id*. ¶ 70.

      In response to being added as a defendant in the operative Complaint, Defendant

LoHi removed the case to this Court on August 30, 2024.  *Doc. 1*.  Even though the

operative Complaint asserts no federal causes of action, Defendant LoHi's removal

notice claims that two statutory provisions confer federal jurisdiction, 28 U.S.C. § 1337

and 28 U.S.C. § 1331.  *Id*. ¶¶ 3-11.  Under § 1337, "[t]he district courts shall have original

jurisdiction of any civil action or proceeding arising under any Act of Congress

---

[1] While not directly relevant here, the Second Amended Complaint also added the following Defendants: Asset Leasing Marketplace, LLC a/k/a/ LoHi Asset Leasing Marketplace, LLC; 5F Leasing, LLC; 5F Logistics, LLC; 5F Brokerage, LLC; and 1F Services, LLC.  *See generally doc. 1-1*.

regulating commerce . . ."  28 U.S.C. § 1337.  § 1331, the "general federal-question statute," *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 787 n.2 (2014), gives district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

Defendant LoHi maintains that removal is appropriate under both the complete preemption doctrine and the substantial federal question doctrine.  *See generally doc. 1.* Specifically, Defendant LoHi contends that the Federal Aviation Administration Authorization Act ("FAAAA"), which prohibits states from "enact[ing] or enforce[ing] a law . . . related to price, route, or service of any motor carrier . . . or any . . . broker," 49 U.S.C. 14501(c)(1), preempts Plaintiffs' state law causes of action for broker negligence. *Doc. 1* at ¶¶ 6-11.  Defendant LoHi further asserts that removal is proper because the operative Complaint raises "significant federal issues," thereby satisfying the substantial federal question doctrine.  *Id.* ¶¶ 4-5.  Defendant LoHi therefore contends that Plaintiffs' negligence claims, though framed as state law causes of action, arise under federal law.  *See generally id*.

Plaintiffs filed the instant Motion to Remand ("Motion") on September 30, 2024. *Doc. 18*.  Defendant LoHi filed its Response in Opposition to the Motion on October 14, 2024.  *Doc. 26*.  Plaintiffs filed their Rely on November 1, 2024.  *Doc. 33*.  On April 25, 2025, the Court issued an Order for Supplemental Briefing, directing Plaintiffs to file a supplemental brief addressing Defendant LoHi's argument that the operative

Complaint presents a substantial federal question.  *Doc. 35*.  The Motion was fully

briefed on May 1, 2025, with the filing of Plaintiffs' Supplemental Brief Addressing

Substantial Federal Question Argument Raised in Remand Briefing.  *Doc. 36*.

## II.    LEGAL STANDARDS

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power

authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013)

(quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Notably, "[i]t

is to be presumed that a cause of action lies outside this limited jurisdiction, and the

burden of establishing the contrary rests upon the party asserting jurisdiction[.]"

*Kokkonen*, 511 U.S. at 377 (citations omitted).  The presumption against federal

jurisdiction reflects "the deeply felt and traditional reluctance of th[e Supreme] Court to

expand the jurisdiction of federal courts through a broad reading of jurisdictional

statutes."  *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 379 (1959), *superseded on

other grounds by statute*, The Jones Act, 45 U.S.C. § 59, *as recognized in Miles v. Apex

Marine Corp.*, 498 U.S. 19 (1990).  Thus, "statutes conferring jurisdiction on federal courts

are to be strictly construed, and doubts resolved against federal jurisdiction."  *United

States ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1280 (10th Cir. 2001) (citation

and quotation marks omitted).

Generally, a defendant may remove "any civil action brought in a State court of

which the district courts of the United States have original jurisdiction[.]"  28 U.S.C. §

1441(a); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.").  Federal courts "must have a statutory basis for their jurisdiction[,]" *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994), which is provided by either federal-question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332, *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1235 (10th Cir. 2003).  As noted above, Defendant LoHi alleges that the Court has federal question jurisdiction over this case.[2]

Federal district courts have jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The Supreme Court has narrowly interpreted federal question jurisdiction under 28 U.S.C. § 1331 through the well-pleaded complaint rule, which provides "that the federal question must appear on the face of a well-pleaded complaint and may not enter in anticipation of a defense."  *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494 (1983).  Consequently, the well-pleaded complaint rule operates as a "powerful doctrine" that "severely limits the number of cases in which state law 'creates a cause of action' that

---

[2] Although Defendant LoHi's Notice of Removal invokes two statutory provisions as bases for federal jurisdiction—28 U.S.C. §§ 1331 and 1337—the Court need only evaluate jurisdiction under § 1331, as § 1337 does not confer an independent basis for jurisdiction beyond that provided by § 1331.  *See Dutcher v. Matheson*, 733 F.3d 980, 985 n.4 (10th Cir. 2013) ("But [28 U.S.C. § 1337] provides no additional grant of jurisdiction beyond that provided in 28 U.S.C. § 1331.")

may be initiated in or removed to federal district court[.]" *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9-10 (1983).

The well-pleaded complaint rule reflects the principle that the plaintiff is the "master of the claim" and may "avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar,* 482 U.S. at 392.  As such, a plaintiff may frame the allegations in the complaint to prevent removal to federal court.  *See Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 282 (1918) (A "plaintiff may by the allegations of his complaint determine the status with respect to removability[.]").  And the defendant's assertion of a defense based on federal law does not transform claims based on state law into a removable federal question.  *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152-54 (1908).  Indeed, a federal defense, including preemption, cannot support removal "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 14.

"[F]ederal jurisdiction attaches when federal law creates the cause of action asserted." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 383 (2016).  The creation test "accounts for the vast bulk of suits that arise under federal law[.]" *Gunn*, 568 U.S. at 257.  But there are two exceptions to the well-pleaded complaint rule: (1) the state law claims are completely preempted by federal law and (2) the state law claims necessarily raise a substantial, disputed federal question.  *Devon*

*Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203-04 (10th Cir.

2012).  This case implicates both exceptions, each of which is analyzed below.

### III.    ANALYSIS

Defendant LoHi maintains that removal is appropriate under both the complete

preemption doctrine and the substantial federal question doctrine.  *See generally docs. 1,*

*26.*  For the reasons set forth below, the Court finds both arguments unpersuasive and

will remand this case to the First Judicial District Court, County of Santa Fe, New

Mexico.

### A.  The FAAAA

The FAAAA was enacted by Congress in 1994 in an effort to avoid "a State's

direct substitution of its own governmental commands for 'competitive market forces'

in determining (to a significant degree) the services that motor carriers will provide."

*Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 372 (2008) (citation omitted).  In relevant

part, the FAAAA provides:

> [A] State . . . may not enact or enforce a law, regulation, or other provision having
> the force and effect of law related to a price, route, or service of any motor carrier
> . . . or any motor private carrier, broker, or freight forwarder with respect to the
> transportation of property.

49 U.S.C. § 14501(c)(1).

The statute, however, includes a "safety exception," which limits the scope of

FAAAA preemption by preserving a State's authority to regulate motor vehicle safety:

the FAAAA "shall not restrict the safety regulatory authority of a State with respect to

motor vehicles . . ." *Id*. § 14501(c)(2)(A).  As the Supreme Court has explained with

regard to the exception in the FAAAA, "Congress' clear purpose in § 14501(c)(2)(A) is to

ensure that its preemption of States' economic authority over motor carriers of

property, § 14501(c)(1), 'not restrict' the preexisting and traditional state police power

over safety." *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 439

(2002).

### B. Preemption

#### i.    Legal Framework

Federal preemption arises in several distinct forms commonly categorized as

express, field, and conflict preemption.  *Devon Energy*, 693 F.3d at 1203 n.4 (citations

omitted).  These three common forms of preemption, often referred to collectively as

ordinary preemption, function as substantive defenses to state law claims.  *Id*.  In

discussing the three forms of ordinary preemption, the Tenth Circuit has noted that

"[f]ederal statutes can preempt state statutes either by an express statement of

preemption or by implication," the latter of which includes both field and conflict

preemption.  *Tarrant Reg'l Water Dist. v. Herrmann*, 656 F.3d 1222, 1241 (10th Cir. 2011).

Express preemption occurs when the language of a federal statute contains an explicit

statement revealing Congress's clear intent to preempt state law.  *See US Airways, Inc. v.

O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010); *see also Hermann*, 656 F.3d at 1241.  Field

preemption occurs "when the federal scheme of regulation is so persuasive that

Congress must have intended to leave no room for a State to supplement it." *O'Donnell*, 627 F.3d at 1324 (citation omitted).  Conflict preemption occurs "when compliance with both the federal and state laws is a physical impossibility, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id*.

Ordinary preemption reflects that federal law may displace state law under the Supremacy Clause; however, it does not convert a state law claim into one arising under federal law for purposes of removal jurisdiction.  *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221 (10th Cir. 2011).  Because the three forms of ordinary preemption function as substantive defenses to state law claims, their assertion does not support removal, even where preemption is the only issue in dispute and potentially dispositive. *Devon Energy*, 693 F.3d at 1203 n.4 (citation omitted).  Accordingly, because ordinary preemption serves as a defense rather than a jurisdictional grant, it cannot provide a valid basis for removal under 28 U.S.C. § 1441.  *See id*.

By contrast, complete preemption, recognized as an exception (or an "independent corollary") to the well-pleaded complaint rule, "makes a state-law claim 'purely a creature of federal law,' and thus removable from state to federal court from the outset." *Hansen*, 641 F.3d at 1220-21 (quoting *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1154-55 (10th Cir. 2004)).  For a claim to be subject to complete preemption, "the challenged claims must 'fall within the scope of federal statutes intended by Congress

10

completely to displace all state law on the given issue and comprehensively to regulate the area.'" *Devon Energy*, 693 F.3d at 1205 (quoting *Hansen*, 641 F.3d at 1221). "That is, the asserted federal statute must 'so pervasively regulate [its] respective area[ ]" that it leaves no room for state-law claims.'" *Id.*; *see also Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996) ("We read the term [complete preemption] not as a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by a federal law, but rather as a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal.").

Complete preemption is a "rare doctrine," one that represents an "extraordinary pre-emptive power." *Devon Energy*, 693 F.3d at 1204 (internal quotations and citations omitted). Indeed, the Supreme Court has identified only three statutory provisions that give rise to complete preemption: "§ 301 of the Labor Management Relations Act of 1947 ("LMRA"), § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), and actions for usury against national banks under the National Bank Act." *Devon Energy*, 693 F.3d at 1204-05 (citation omitted); *see also Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560-61 (1968) (LMRA); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63 (1987) (ERISA); *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 3-4 (2003) (National Bank Act). Accordingly, the Supreme Court has cautioned that complete preemption is not to be "lightly implied." *Bill Johnson's*

*Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 752 (1983) (Brennan, J., concurring); *see also*

*Schmeling*, 97 F.3d at 1340 (noting that the Supreme Court has extended this doctrine

"reluctantly").

The Tenth Circuit has held that a claim of complete preemption requires

affirmative answers to two questions: (1) does the federal statute at issue preempt the

state law on which the plaintiff relies; and (2) did Congress intend to allow removal "as

manifested by the provision of a federal cause of action to enforce the" federal statute?

*Devon Energy*, 693 F.3d at 1205.  Courts are instructed to begin the analysis with the

second question.  *See Schmeling*, 97 F.3d at 1343 (explaining that the interests of "comity

and prudence" dictate that courts avoid addressing needlessly the first prong, which

will frequently require a discussion of the merits of the preemption defense).

If the district court concludes that complete preemption does not apply, it may

not proceed to evaluate the merits of an express preemption defense.  *See Felix*, 387 F.3d

at 1158 ("The difference between preemption and complete preemption is important.

When the doctrine of complete preemption does not apply . . . the district court, being

without removal jurisdiction, cannot resolve the dispute regarding preemption.  It lacks

the power to do anything other than remand to the state court where the preemption

issue can be addressed and resolved.") (quoting *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d

350, 355 (3d Cir. 1995)).

ii.    *Defendant LoHi Fails to Establish Complete Preemption*

Neither the Supreme Court nor the Tenth Circuit has addressed whether state law negligence claims for personal injury against a broker are completely preempted by the FAAAA.  Nevertheless, the Act's preemption clause **expressly** preempts certain state laws.  *See Rowe*, 552 U.S. at 375-76 (finding that a state law regulating delivery service procedures was preempted by the FAAAA).  Despite this, "the question remains whether Congress intended for the [FAAAA] to exert **complete** preemption[.]"  *Tres Lotes LLC v. BNSF Ry. Co.*, 61 F. Supp. 3d 1213, 1216 (D.N.M. Nov. 21, 2014) (bold added).  As outlined above, answering this question involves first examining whether Congress intended to permit removal by providing a federal cause of action under the FAAAA.  *See Devon Energy*, 693 F.3d at 1205; *see also Anderson*, 539 U.S. at 8 ("[A] state claim may be removed to federal court . . . when a federal statute wholly displaces the state-law cause of action through complete pre-emption."); *see also id*. at 9 n.5 ("[T]he proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive[.]").

To determine whether a private cause of action exists, the Court must begin with the text of the statute.  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979).  The cause of action may be express or implied.  *See Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) ("An express federal cause of action states, in so many words, that the law permits a claimant to bring a claim in federal

court."); *California v. Sierra Club*, 451 U.S. 287, 292-93 (1981).  An implied right of action, by contrast, requires the Court to infer that Congress created a private right and provided for a private remedy, all without taking the conventional route of doing so expressly.  *See generally Ziglar v. Abbasi*, 582 U.S. 120, 131-36 (2017); *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 119-20 (2005).  Courts must proceed with caution before finding that a statute creates an implied cause of action.  *See Ziglar*, 582 U.S. at 132.  Even though the right is implied rather than express, the Supreme Court has made clear that Congress's intent to imply such a claim must be expressed in "clear and unambiguous terms."  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002).

Rather than claiming that the FAAAA itself creates a federal cause of action, Defendant LoHi contends that 49 C.F.R. § 371.2 and 49 U.S.C. § 14916(a)-(d) establish federal causes of action against brokers that displace Plaintiffs' state law claims.  *Doc. 26* at 10-11.  These arguments are unavailing.  First, the portion of 49 C.F.R. § 371.2 cited by Defendant LoHi merely defines the term "broker."  *See* 49 C.F.R. § 371.2 ("*Broker* means a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier.")  Defendant LoHi relies on this definition to support the proposition that a broker may be sued under federal law for arranging for the transportation of property by an *unauthorized* motor carrier.  *Doc. 26* at 10-11.  However, 49 C.F.R. § 371.2 is purely definitional and does not create any substantive rights or remedies, let alone an express private right of action.

Second, Defendant LoHi's reliance on 49 U.S.C. § 14916(a)-(d) fares no better. Subsection (a) prohibits a person from providing interstate brokerage services unless they are properly registered under 49 U.S.C. § 13904 and have satisfied the financial security requirements under 49 U.S.C. § 13906. 49 U.S.C. § 14916(a). Subsection (b) provides narrow exceptions to the registration and financial security requirements set forth in subsection (a) for certain entities, including ocean freight forwarders, custom brokers, and indirect air carries; however, these exceptions are not relevant here. 49 U.S.C. § 14916(b). Subsection (c) creates a limited enforcement mechanism: it subjects those who knowingly authorize, consent to, or permit violations of subsection (a) to civil penalties payable to the United States, and it provides a private cause of action to "injured part[ies]" for "all valid claims incurred without regard to amount." 49 U.S.C. § 14916(c). Finally, subsection (d) extends that liability jointly and severally to both corporate entities and their officers, directors, and principals. 49 U.S.C. § 14916(d). Critically, however, the statute's private right of action is limited in scope. By its plain terms, subsection (c) applies only to injuries caused by the unauthorized provision of brokerage services—that is, violations of subsection (a). Nothing in § 14916 creates a general federal cause of action for negligence, nor does it encompass personal injuries resulting from the conduct of motor carriers or brokers. In short, § 14916 is an enforcement statute designed to deter unregistered brokerage activity and ensure compliance with licensing and security requirements. It does not reflect any

15

congressional intent to displace state tort law or to occupy the field of personal injury claims arising from brokered transportation services.  Accordingly, neither 49 C.F.R. § 371.2 nor 49 U.S.C. § 14916 provides a basis to displace Plaintiffs' state law negligence claims.

Next, Defendant LoHi contends that because the FAAAA was enacted in response to Congress's finding that "state governance of intrastate transportation of property had become unreasonably burdensome to free trade, interstate commerce, and American consumers," it logically follows that Congress intended to vest interpretive authority over the FAAAA exclusively in federal courts.  *Doc. 26* at 11 (citations and internal quotations omitted).  This argument, however, does not support Defendant LoHi's position that Congress intended to displace the application of state tort law for personal physical injuries allegedly caused by brokers.  Even if Congress intended federal courts to play a role in resolving interstate commerce disputes, that does not support the inference that Congress intended for the FAAAA to authorize a private right of action for personal injury claims arising under state tort law.  *See City of Columbus*, 536 U.S. at 439 ("Congress' clear purpose in § 14501(c)(2)(A) is to ensure that its preemption of States' economic authority over motor carriers of property, § 14501(c)(1), 'not restrict' the preexisting and traditional state police power over safety.").

Finally, Defendant LoHi urges this Court to disregard the reasoning of *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020), and instead follow the guidance of *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261 (11th Cir. 2023), and *Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453 (7th Cir. 2023).  However, subject matter jurisdiction was not at issue in *Miller*, *Aspen*, or *Ye*; in each of those cases, the federal courts had already properly exercised jurisdiction and were considering only the issue of ordinary preemption under the FAAAA, not the threshold question of complete preemption.  *See Miller*, 976 F.3d at 1021; *Aspen*, 65 F.4th at 1266 n.1; *see generally Ye*, 74 F.4th 453; *see also Ying Ye v. Glob. Sunrise, Inc.*, 2020 WL 1042047, at *2 n.1 (N.D. Ill. Mar. 4, 2020), *aff'd sub nom*. Ye, 74 F.4th 453.  By contrast, the issue before this Court is whether Defendant LoHi may remove a case asserting only state law claims based on the "rare doctrine" of complete preemption.  Because *Miller*, *Aspen*, and *Ye* do not address the FAAAA in the context of complete preemption and do not hold that the FAAAA expressly or impliedly creates a cause of action against brokers for personal injury, they do not guide this Court's analysis.[3]

Defendant LoHi has failed to identify any provision of the FAAAA, or any related federal provisions, that expressly or impliedly create a federal cause of action

---

[3] The parties have submitted supplemental authority in support of their positions, including both federal and state court decisions.  *See docs*. *37*, *38*.  However, like *Miller*, *Aspen*, and *Ye*, the cases cited in the supplemental filings do not address the threshold question of complete preemption under the FAAAA or the propriety of removal.  Instead, they involve circumstances where federal jurisdiction was already established or not contested.  As such, these authorities are not relevant to the jurisdictional issue presently before the Court.

displacing Plaintiffs' state tort claims.  Consistent with the reasoning of many other

courts, this Court likewise concludes that no provision of the FAAAA creates a federal

cause of action.  *See City of Rockford v. Raymond*, 1999 WL 218549, at *2 (N.D. Ill. Apr. 14,

1999) (explaining that "section 14501(c) . . . contains no detailed, comprehensive civil

enforcement scheme providing exclusive federal remedies," and observing that "[t]he

lack of specific language creating jurisdiction in the federal courts shows a lack of

congressional intent to make claims under the FAAAA removable to federal court.");

*Est. of Wray ex rel. Wray v. Kennedy Bros. Logistics, Inc.*, 2022 WL 16550315, at *4 (E.D.N.C.

Oct. 31, 2022) ("[T]he statutory text of the FAAAA contains no clear Congressional

intent to engulf the entire area of personal injury and wrongful death claims involving

transportation brokers and motor carriers."); *Vargas v. Airport Terminal Servs., Inc.*, 2020

WL 614892, at *7 (C.D. Cal. Feb. 7, 2020) ("This [c]ourt has found no circuit or Supreme

Court decision that has concluded the FAAA[A] effects complete preemption on all

state law claims within its scope."); *Raaf v. UPS Ground Freight, Inc.*, 2018 WL 4609935, at

*3 (D. Or. Sept. 25, 2018) ("Congress did not manifest an intent to make state law claims

preempted by the FAAAA removable to federal court."); *Surplus Afr. Foods, LLC v. Air

France*, 2017 WL 10664134, at *3 (D.N.J. Nov. 30, 2017), *report and recommendation adopted*,

*Surplus Afr. Foods, LLC v. Air France*, 2017 WL 10664145 (D.N.J. Dec. 18, 2017) ("it is hard

to imagine that . . . the FAAAA occupies one of the few select areas of complete

preemption for purposes of removal.") (citation omitted); *Nationwide Freight Sys., Inc., v.*

*Ill. Com. Comm'n*, 2012 WL 5906538, at *3 (N.D. Ill. Nov. 26, 2012) ("By its plain language, § 14501(c) does not create a cause of action."); *Carolina Cas. Ins. Co. v. Tony's Towing, Inc.*, 2011 WL 4402147, at *4 (S.D. Ala. Sept. 22, 2011) ("[I]t is abundantly clear that section 14501(c) does not create federal question jurisdiction.").

In light of the foregoing, the Court concludes that neither the FAAAA nor the additional federal provisions cited by Defendant LoHi provide an express or implied cause of action that wholly displaces Plaintiffs' state law negligence claims. As such, Congress did not intend for these statutes to serve as a basis for removal. The Court does not reach the question of whether the FAAAA ultimately preempts Plaintiffs' claims against Defendant LoHi. *See Felix*, 387 F.3d at 1158 ("When the doctrine of complete preemption does not apply . . . the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption.").

## C. Substantial Federal Question

### i.    *Legal Framework*

Removal is permitted when the plaintiff's right to relief requires resolution of a substantial question of federal law. *Franchise Tax Bd.*, 463 U.S. at 13; *see also Devon Energy*, 693 F.3d at 1203-04 (noting that the substantial federal question doctrine is one of two recognized exceptions to the well-pleaded complaint rule). Ordinarily, federal-question jurisdiction is invoked by plaintiffs pleading a cause of action created by federal law. *See Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308,

312 (2005).  However, the Supreme Court has recognized "that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law[.]"  *Id.*  This is true "[e]ven though state law creates [a plaintiff's] cause[] of action" because a "case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties."  *Franchise Tax Bd.*, 463 U.S. at 13.

The Supreme Court articulated the substantial federal question test in *Grable* as follows: does the "state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[?]"  545 U.S. at 314.  "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  "When making the determination of whether a nonfederal claim turns on a substantial question of federal law, courts should exercise 'prudence and restraint.'"  *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 810 (1986)).

In any event, under the framework set forth in *Grable*, "[t]he 'substantial question' branch of federal question jurisdiction is exceedingly narrow."  *Gilmore v.*

20

*Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012); *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (reaffirming *Grable's* test and stating that cases achieving jurisdiction under *Grable* fall into a "special and small category"). It is not trigged by a "mere need to apply federal law in a state-law claim[.]" *Grable*, 545 U.S. at 313. The Tenth Circuit has elaborated on the *Gunn* test by articulating several principles that define the "narrow boundaries" of this basis for federal jurisdiction:

> [T]he recognition of substantial question jurisdiction does not disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction. Nor can federal question jurisdiction depend solely on a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue. Finally, if a claim does not present a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous cases, but rather is fact-bound and situation-specific, then federal question jurisdiction will generally be inappropriate.

*Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 770 F.3d 944, 947-48 (10th Cir. 2014) (internal quotations and citations omitted). Moreover, as the *Becker* court noted, this inquiry by the court is constricted by the well-pleaded complaint rule. *See id.* "When determining whether a claim arises under a federal law, 'we examine the well pleaded allegations of the complaint and ignore potential defenses.'" *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) (quoting *Anderson*, 539 U.S. at 6).

ii.     *Defendant LoHi Fails to Establish Substantial Federal Question*

Defendant LoHi contends that all four *Grable* factors are satisfied. *Doc. 26* at 6-9. First, Defendant LoHi argues that a federal issue is necessarily raised because the duties

Plaintiffs allege Defendant LoHi violated arise solely under federal law, making federal law the only specific source of the duty Plaintiffs must establish to prevail. *Id*. at 6-7. Second, Defendant LoHi asserts that these federal issues—namely, the duties, regulations, and standards of care applicable to freight brokers—are actually disputed. *Id*. at 7. Third, Defendant LoHi maintains that the federal issue is substantial because resolution of this case could impact the classification and regulation of the entire freight brokerage industry. *Id*. at 7-8. Fourth, Defendant LoHi contends that exercising jurisdiction would not upset the balance of federal and state judicial responsibilities, as the issues at stake involve the regulation of interstate commerce, a domain already governed primarily by federal law. *Id*. at 9. Defendant LoHi further argues that federal jurisdiction in cases like this would not result in a wholesale shift of traditionally state law personal injury claims into federal court because, absent diversity jurisdiction, routine automobile accidents would remain in state court, and only cases specifically involving federally regulated freight brokers would be affected. *Id*.

The Court need not resolve the first two *Grable* factors—whether a federal issue is necessarily raised and actually disputed—because Defendant LoHi has not satisfied the third and fourth: that the federal issue is substantial and capable of resolution in federal court without disrupting the congressionally approved balance of federal and state judicial responsibilities. This conclusion is consistent with the Supreme Court's

reasoning in *Merrell Dow*, as subsequently clarified in *Grable*.  Given the interrelated

nature of the third and fourth factors in this context, the Court addresses them together.

Despite predating *Grable*, the reasoning in *Merrell Dow* remains central to the

analysis of the third and fourth *Grable* factors.  In *Merrell Dow*, the plaintiffs asserted

state law negligence claims predicated on the defendants' alleged misbranding of a

drug in violation of federal law.  478 U.S. at 805.  As in this case, the plaintiffs in *Merrell*

*Dow* relied on federal standards to support their state law negligence theories.  *Id*. at

805-06; s*ee doc. 1-1* ¶ 70 (Plaintiffs alleging in their negligence per se count that

"Defendant['s] . . . acts and omissions as alleged in the other counts of this Complaint

were negligent violations of Title 49 of the Code of Federal Regulations, §§ 393.11(b)

and 392.33(a), the Federal Motor Vehicle Safety Standard No. 108, and 49 CFR 571.108,

among others.").  The Supreme Court concluded that allegations invoking federal

standards in support of state law negligence claims reflect only "the presence of a

federal issue in a state-created cause of action" which is "insufficiently 'substantial' to

confer federal question jurisdiction."  *Id*. at 814.  Additionally, the Court concluded that

because Congress had not provided a private cause of action for the alleged violation of

federal law, allowing such claims to proceed in federal court "as an element of the state

tort" would not "serve congressional purposes and the federal system."  *Id*.

The Supreme Court later reaffirmed the continued validity of *Merrell Dow* and

clarified its reasoning in *Grable*.  With respect to *Merrell Dow's* holding on the absence of

a federal cause of action, the *Grable* Court clarified that while such an absence is not

necessarily dispositive, it remains a relevant consideration, particularly when the

federal standards appear only as elements of garden-variety state tort claims, in

evaluating the substantiality of the federal issue and the balance of federal and state

judicial responsibilities:

> The [*Merrell Dow*] Court saw [the absence of any federal cause of action] as worth some consideration in the assessment of substantiality. But its primary importance emerged when the Court treated the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331. The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.
>
> One only needed to consider the treatment of federal violations generally in garden variety state tort law. **"The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings."** Restatement (Third) of Torts § 14, Reporters' Note, Comment *a*, p. 195 (Tent. Draft No. 1, Mar. 28, 2001). See also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 36, p. 221, n.9 (5th ed. 1984) **("[T]he breach of a federal statute may support a negligence per se claim as a matter of state law" (collecting authority))**. A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts. Expressing concern over the "increased volume of federal litigation," and noting the importance of adhering to "legislative intent," *Merrell Dow* thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any

24

state-law tort case implicating federal law "solely because the violation of
the federal statute is said to [create] a rebuttable presumption [of
negligence] . . . under state law." 478 U.S., at 811-812, 106 S.Ct. 3229
(internal quotation marks omitted). In this situation, no welcome mat
meant keep out. *Merrell Dow's* analysis thus fits within the framework of
examining the importance of having a federal forum for the issue, and the
consistency of such a forum with Congress's intended division of labor
between state and federal courts.

545 U.S. at 318-19 (bold added).

*Grable's* reaffirmation of *Merrell Dow* supports the Court's conclusion that

Defendant LoHi cannot establish the substantiality of the federal issue and the balance

of federal and state judicial responsibilities. Specifically, the uniform absence of a

federal private right of action, together with Plaintiffs' garden-variety negligence per se

claim predicated solely on federal standards, confirms that the purported federal issue

lacks the requisite substantiality and that its resolution in federal court would upset the

federal-state balance. First, every federal statute on which Defendant LoHi relies lacks a

private cause of action for personal injury claims. Courts overwhelmingly agree that

the Federal Motor Carrier Safety Regulations ("FMCSR") do not create a cause of action

for personal injury. *See Bales v. Green*, 2018 WL 1144980, at *2 (N.D. Okla. Mar. 2, 2018)

(collecting cases). Likewise, Defendant LoHi identifies no provision in 49 C.F.R. §

571.108, which governs lighting and reflective equipment requirements for motor

vehicles, or in the FAAAA, that provides a cause of action for personal injury. Just as

federal law supplied no cause of action in *Merrell Dow*, it supplies none here. Because

the transportation industry is no less regulated than the pharmaceutical industry at

25

issue in *Merrell Dow*, the concern identified in *Merrell Dow* and *Grable*—that allowing removal in such cases would cause the "potentially enormous shift of traditionally state cases into federal courts"—is equally applicable here.  Second, Plaintiffs' negligence per se claim is the quintessential garden-variety state law negligence action that, absent diversity jurisdiction, belongs in state court.  *See Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1095 (S.D. Ill. Jan. 3, 2007) (quoting *Grable*, 545 U.S. at 319) (explaining that a state law negligence action in which a violation of a federal statute is asserted merely as an element of a negligence per se theory is "unmistakably of the kind that, absent federal subject matter jurisdiction in diversity, belongs in state court so as not to 'materially affect, or threaten to affect, the normal currents of litigation.'").  As both *Grable* and *Merrell Dow* make clear, incorporating federal regulations to define the standard of care under a state law tort theory does not, standing alone, confer federal question jurisdiction.  *See id*. (collecting cases).

Furthermore, the regulatory structures of both the FMCSR and the FAAAA reinforce Congress's intent to preserve the traditional role of state law in matters of safety.  The FMCSR explicitly provides that "[e]xcept as otherwise specifically indicated, [the FMCSR] is not intended to preclude States or subdivisions thereof from establishing or enforcing State or local laws relating to safety, the compliance with which would not prevent full compliance with these regulations by the person subject thereto."  49 C.F.R. § 390.9.  In other words, FMCSR only sets "minimum safety

standards for commercial motor vehicles." 49 U.S.C. § 31136(a).  This framework reflects Congress's deliberate choice to allow federal and state safety laws to operate in tandem, reinforcing that Congress did not intend for the inclusion of FMCSR standards in a negligence claim to independently confer federal jurisdiction.  Similarly, as discussed above, the structure of the FAAAA reinforces Congress's intent not to restrict the states' traditional state police power over safety.  *City of Columbus*, 536 U.S. at 439.

Accordingly, Plaintiffs' state law negligence claims do not necessitate resolving a substantial question of federal law, and removal on this ground is improper.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Defendant LoHi improperly removed this case to federal court.  In the absence of jurisdiction, the Court will not address Defendant LoHi Logistics, LLC's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (*doc. 5*).

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Remand (*doc. 18*) is GRANTED.

IT IS FURTHER ORDERED that this case be REMANDED to the First Judicial District Court, County of Santa Fe, New Mexico, Cause Number D-101-CV-2021-01922.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**

27